**Charles CHODLE, Jr., as representative of Elizabeth Chodle, Plaintiff,**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH, EDUCATION AND WELFARE, Defendant.**

**No. 72 C 2308.**

United States District Court, N. D. Illinois, E. D.

Nov. 14, 1973.

2. Beverly v. Morris, 470 F.2d 1356 (5th Cir. 1972).

3. Cumming v. Chastain, 97 Ga.App. 13, 15, 102 S.E.2d 97, 98 (1958).

James Lee Daubach, Daubach & Moran, Hillside, Ill., for plaintiff.

James R. Thompson, U. S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes pursuant to the report and recommendations of a magistrate in accordance with Rule 1, subd. D(2)(a)(i) of the Magistrate Rules of the Northern District of Illinois.

This is an action brought pursuant to Section 1869(b) of the Social Security Act, 42 U.S.C. § 1395ff(b), and 42 U.S. C. § 405(g) for judicial review of a "final decision" of the Secretary of Health, Education and Welfare which denies payment of hospital insurance benefits (Part A of Title XVIII of the Social Security Act, 42 U.S.C. § 1395c, commonly referred to as "Medicare") on behalf of Elizabeth Chodle* for services rendered to her during her stay at the Abbey-Winfield Geriatric and Convalescent Home during the period of February 16, 1970 through April 15, 1970. The Secretary's "final decison" is the Appeals Council's decision of July 18, 1972 (Tr. 5–11) which reverses an earlier hearing examiner's decision in favor of the claimant Elizabeth Chodle (Tr. 22–25).

The magistrate recommended that the "final decisions" of the Secretary should be reversed and the Court should enter judgment for the plaintiff.

It is the opinion of this Court that the report and recommendations of the magistrate are proper.

It is clear that the scope of this Court's review is limited to determining from the record as a whole whether there exists substantial evidence to support the findings and conclusions of the Secretary that from February 16, 1970 to March 7, 1970 care given to plaintiff was custodial care and that the services from March 7, 1970 through April 15, 1970 were not continuous skilled nursing services received within 14 days after the plaintiff's discharge from the hospital. Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Consolidated Edison Co. v. N. L.R.B., 305 U.S. 197, 59 S.Ct. 206, 83 L. Ed. 126 (1938).

The record indicates that the plaintiff and claimant was admitted to Delnor Hospital, St. Charles, Illinois from Janu-

---

* Although this action is brought in the name of "Elizabeth Chodle" the record indicates that the claimant's surname is in fact "Chodl" (Tr. 36).

ary 11, 1970 to February 3, 1970. The plaintiff's condition was diagnosed as a compression fracture of the second lumbar vertebra with anterior and right lateral wedging, fracture of four right ribs, severe secondary anemia, gastro-intestinal bleeding (site unknown) and hypo-albuminemia (cause unknown) (Rec. pp. 73–77; Ex. 5). She had previously suffered a fracture of the head of the femur five years earlier which has left residual effects. After the plaintiff's discharge from the hospital on February 3, 1970 she went home where she had two visits from a home visiting nurse and was given iron tablets to alleviate the anemia (Rec. p. 42).

While at home on February 15, 1970 she suffered a fall caused by dizziness and weakness. The treating doctor determined that her condition had not stabilized and that to prevent further injury she required skilled nursing care, intensive medication, a series of blood tests and heat therapy (Rec. pp. 45–47). The record shows that on February 16, 1970 she was admitted to the Abbey-Winfield Home. At that time plaintiff was badly bruised from her fall and had gastro-intestinal bleeding. Given the plaintiff's condition it was necessary to watch the plaintiff for further bleeding, to carefully check the plaintiff's hemoglobin, and to provide physical therapy for the plaintiff's walking problem (Rec. p. 79). Oral medication by tablets was prescribed for the plaintiff's blood deficiency, namely anemia, and for constipation, which later was also relieved by an enema. There were no doctor visits to the Abbey-Winfield Home for the expressed reason that they would add to the medical costs, but the doctor was to receive nurses' reports by telephone.

A review of the entire record plainly shows that the condition of the plaintiff was such that her treatment was not mere custodial care for the period of time in question. The record appears to substantiate the decision of the hearing examiner in favor of the plaintiff. It is clear that one of the purposes for the plaintiff's continued hospitalization at Abbey-Winfield was to provide physical therapy that would enable the plaintiff to walk. · This was required so that the plaintiff would be less likely to re-injure herself and then to some degree "to prevent further injuries to herself such as those multiple fractures caused by falling at home during syncope which were responsible for her first hospital admission in January, 1970" (Rec. p. 93.) The plaintiff's total physical condition at that time was unstable and had "indeed deteriorated because of orthostatic hypotension and syncope secondary to severe anemia which contributed to further injuries at home during this period" (Rec. p. 93). In order to ascertain if other treatment would be necessary it was necessary at this time to provide continued observation to determine the causes of gastro-intestinal bleeding and severe secondary anemia (Rec. p. 11).

It is apparent to this Court that the finding of the Appeals Council was erroneous. The plaintiff's treatment was not mere custodial care and should properly be covered by Medicare. The Appeals Council made no finding contrary to that of the hearing examiner with respect to the services rendered during the relevant period. The record substantiates that the plaintiff received care during the relevant period which is properly covered by Medicare.

It is the opinion of this Court that the report and recommendations of the magistrate are proper and just. Therefore, the final decision of the Secretary should be reversed and there is no need for the Court to remand the instant action to the Secretary.

Accordingly, it is hereby ordered that the "final decision" of the Secretary is reversed and judgment in favor of the plaintiff is granted.